IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SRS TECHNOLOGIES, INC., | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] CV-01-BE-0781-NE |
| | ] |
| PHYSITRON INC., et al., | ] |
| | ] |
| Defendant. | ] |
| | ] |

FILED
03 JUL 23 AM 10: 57
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 2 3 2003

MEMORANDUM OPINION

This matter is before the court on "Plaintiff's Motion to Modify Protective Order and For Other Relief" (Doc. 95). In the motion, Plaintiff confirms earlier communication with this office that the parties have reached a final settlement of this trade secret litigation as to injunctive and monetary relief. The only issue remaining involves documents produced by Defendants under a protective order. The motion seeks to allow Plaintiff to retain certain documents and depositions previously designated "confidential" or "restricted confidential" in accordance with the Protective Order and agreement of confidentiality (Doc. 58) entered by this court on June 27, 2002. For the reasons stated below, the requested relief is DENIED.

I.      Background

On September 21, 2001, Plaintiff filed a Motion for Preliminary Injunction (Doc. 13), seeking, among other relief, to prohibit Defendants "from using, divulging and/or communicating any of [Plaintiff's] trade secrets, proprietary information, confidential information and copyrighted works, acquired as a result of Paxton and/or Witzig's employment

1

101

with [Plaintiff] . . . ." On March 1, 2002, at the request of the parties, this court appointed Mr. Todd Deveau as a special master (Doc. 47) to render advice to the court on technology matters and to resolve discovery disputes. The court began a hearing on Plaintiff's Motion for Preliminary Injunction (Doc. 13) on September 10, 2002; however, the hearing was continued on the second day. Before resuming the preliminary injunction hearing, the parties informed the court that they were amenable to mediation. On September 26, 2002, the court referred the case to special master Todd Deveau for mediation (Doc. 92). After the parties reached a settlement, the court, on November 13, 2002, entered the Injunction and Order and For Other Relief (Doc. 94) submitted by the parties. On January 7, 2003, Plaintiff filed a Motion to Modify the Protective Order (Doc. 95) that is the subject of this memorandum opinion.

II.     Protective Order

On June 27, 2002, the court entered a protective order that restricted disclosure and limited the use of confidential information exchanged in the course of discovery (Doc. 58). The parties negotiated and agreed to this 10-page protective order and it formed the basis for the conduct of extensive discovery in this case. Certainly, a protective order for confidential information is appropriate in a case such as this one that involves allegations of trade secrets and proprietary information. The court finds particularly interesting the assertion by Plaintiff that it should now be allowed virtually unrestricted access to and use of confidential documents produced by the Defendants, but that the protective order should remain in full force to protect Plaintiff's documents.

III.     Standard of Modifying Protective Order

The parties strongly disagreed as to the standard to be applied in this case to determine whether to modify the protective order. Plaintiff argues that "'[m]odification of a protective order is a matter falling within the discretion of the district court.' *Public Citizen v. Leggett Group, Inc.*, 858 F.2d 775, 790 (1st Cir. 1988). Courts have discretion 'to lift or modify protective orders in light of changed circumstances that eliminate a continued need for protection.' *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393, 403 (W.D. Va. 1987) (*citing in part*, *Krause v. Rhodes*, 671 F.2d 212, 219 (6th Cir. 1982))." Plaintiff's Motion to Modify Protective Order (Doc. 95), at 2. Defendants argue for the stronger standard employed by the Second Circuit that requires "extraordinary circumstances" or a "compelling need" before a court will modify a protective order. Defendants' "Opposition to Plaintiff's Motion to Modify Protective Order and for Other Relief" (Doc. 96) at 3 (*citing In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir.) *cert. denied*, 484 U.S. 953 (1987).

Neither party cites, and this court could find, no dispositive cases from the Eleventh Circuit. Plaintiff, in its reply brief (Doc. 97), did cite an Eleventh Circuit case that involved the government's efforts to obtain confidential documents through a grand jury subpoena, *In re Grand Jury Proceedings*, 995 F.2d 1013 (11th Cir. 1993). That case, while providing some limited guidance, is too easily distinguishable from the case at hand to control the outcome of this case.

In that case, the Eleventh Circuit stated: "The sole issue before us is whether a protective order issued under Rule 26(c) of the Federal Rules of Civil Procedure may shield a deposition given in a civil suit **from a subsequent federal grand jury subpoena**." *In re Grand Jury*

3

*Proceedings*, 995 F.2d at 1015 (emphasis added). When the Eleventh Circuit stated that it "reject[ed] the Second Circuit's *Martindell [v. International Tel. & Tel. Corp.* 594 F.2d 291 (2d Cir. 1979)] approach of balancing the interests involved in favor of the Fourth Circuit's per se rule,"[1] that decision was based upon the fact that it was considering a grand jury request for a deposition that had been taken in a civil matter. 995 F.2d at 1015. The Eleventh Circuit made this distinction clear when it stated: "[p]rotective orders are merely a facilitating device and should not be used to shield relevant information from a valid grand jury subpoena." 995 F.2d at 1017. It held that "[p]ermitting witnesses to rely on civil protective orders to keep information from a criminal investigation disrupts the essential grand jury process and threatens the grand jury's independence from the judiciary." *Id.*

This case does not involve protected information needed by a grand jury as part of a criminal investigation. Instead, the issue in this matter involves the integrity of a validly negotiated and entered protective order that governed the discovery process in this dispute versus the desire of one party to now have unlimited access to that protected information. The interests do not rise to the level of the interests involved with a grand jury subpoena.

Although Plaintiff asserts a "majority rule," a quick review of cases cited by Plaintiff shows no consensus among the circuits as to the proper standard to apply here. In *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782-83 (1st Cir. 1988), a citizen's group wanted information about a tobacco case. Survivors of cigarette smoking brought suit against a tobacco company, with their goal being to allow a public interest group access to discovery documents.

---

[1] "In *In re Grand Jury Subpoena*, 836 F.2d 1468, 1477 (4th Cir. 1988) . . ., the Fourth Circuit adopted a per se rule that a protective order will not shield information <u>from a grand jury subpoena</u>." *In re Grand Jury Proceedings*, 995 F.2d at 1015 (Emphasis added).

4

*Public Citizen*, 858 F.2d at 778 - 80. The First Circuit correctly recognized that "[t]he Supreme Court established long ago that even an injunction entered by consent of the parties ... is always modifiable." 858 F.2d at 782. The First Circuit held that the district court had the power to modify its protective order if circumstances justified. *Id.*

One huge difference between *Public Citizen* and this case is that the protective order considered in *Public Citizen* was entered over the objections of the plaintiffs, while in this case the parties mutually agreed to the terms of the protective order. Additionally, Plaintiff SRS, unlike Public Citizen (a Ralph Nader watchdog group), is not a part of a public citizen group interested in obtaining access to documents involved in this case for the public benefit; Plaintiff's interest is in using Defendants' trade secrets and proprietary information obtained in this case under a protective order in lawsuits against third parties.

Another case cited by Plaintiff, *Pansy v. Borough of Stroudsburg*, involved newspapers seeking information about a case after it settled. 23 F.3d 772, 779 (3rd Cir. 1994). As was the case in *Public Citizen*, public interest in the litigation played a central issue in the *Pansy* decision. The Third Circuit discussed the public's right to know about out-of-court settlements. *Pansy,* 23 F.3d at 779 (*citing* Anne-Therese Bechamps, Note, *Sealed Out of Court Settlements: When Does the Public Have a Right to Know?*, 66 Notre Dame L. Rev. 117, 130 (1990)). Ultimately, the Third Circuit ruled that the newspapers could intervene and ask the trial court to amend its protective order. 23 F.3d at 789-92.

A review of the *Pansy* decision proves helpful because it outlines how different circuits have dealt with the issue of modification of protective orders. The Third Circuit realized a "growing consensus among the courts of appeals that intervention to challenge confidentiality

orders may take place long after a case has been terminated." 23 F.3d at 789. The Third Circuit found that "[t]he Court of Appeals for the Second Circuit has announced a stringent standard for modification, holding that a confidentiality order can only be modified if an extraordinary circumstance or compelling need warrants the requested modification." *Id.* (citations omitted). It also found that the "Sixth Circuit has apparently adopted the Second Circuit's standard." *Id.* at n.24 (*citing United States v. Kentucky Utils. Co.*, 927 F.2d 252, 255 (6th Cir. 1991). But the Third Circuit noted that while "[o]ther courts of appeals have rejected this stringent standard [and] have held that a more lenient test for modification applies," they "have failed to articulate precisely what that standard is." 23 F.3d at 789 (*citing Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir.), *cert. denied,* 506 U.S. 868, 113 S. Ct. 197, 121 L. Ed.2d 140 (1992); *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1428 (10th Cir.1990), *cert. denied,* 498 U.S. 1073, 111 S. Ct. 799, 112 L. Ed.2d 860 (1991); *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 791 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S. Ct. 838, 102 L. Ed.2d 970 (1989); *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.,* 823 F.2d 159, 163-64 (6th Cir.1987)).

The Third Circuit held that the standard for modification employed by the Court of Appeals for the Second Circuit was too stringent, and it adopted a balancing standard: a "balancing test that is used in determining whether to grant such orders in the first instance, with one difference: one of the factors the court should consider in determining whether to modify the order is the <u>reliance by the original parties on the confidentiality order</u>." 23 F.3d at 790 (emphasis added). The court still held that the "party seeking to modify the order of confidentiality must come forward with a reason to modify the order." *Id.* Once that party articulates a reason for

6

modification, "the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Id.* The Third Circuit never decided whether the protective order should be modified; it simply remanded the case to the district court to determine whether circumstances justified modifying the confidentiality order. *Id.*

The Tenth Circuit has also tried to determine how other circuits addressed the modification of protective order issue and how it should handle this issue. *See United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1424, 1427 (10th Cir. 1990). The Tenth Circuit held that "[a]s long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed." *United Nuclear Corp.*, 905 F.2d at 1427, (*citing Public Citizen*, 858 F.2d at 781-82; *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir.), *cert. denied,* 484 U.S. 953, 108 S. Ct. 344, 98 L. Ed.2d 370 (1987)). Then, the Tenth Circuit simply held that "modification of a protective order, like its original entry, is left to the discretion of the district court." *Id.* (*citing Wyeth Laboratories v. United States Dist. Ct.*, 851 F.2d 321, 323 (10th Cir. 1988)).

Unlike this case, which involves a party to the litigation who consensually entered into a protective order and now seeks to get the protective order modified, the *United Nuclear* case involved a collateral litigant who sought access to discovery produced under a protective order. *See* 905 F.2d at 1428. In *United Nuclear*, the court found a "counterveiling efficiency consideration - saving time and effort in the collateral case by avoiding duplicative discovery." *Id.* As the Tenth Circuit noted, "stipulated 'blanket' protective orders are becoming standard practice in complex cases." 905 F.2d at 1427 (*citing* Manual for Complex Litigation, Second, §

21.431 (1995)). "They allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure..." *Id.* (citations omitted). The Tenth Circuit recognized that "[a]llowing modification of protective orders for the benefit of collateral litigants tends to undermine the order's potential for more efficient discovery." 905 F.2d at 1427-28.

In situations involving a collateral litigant seeking modification of the order, "some circuits have adopted a presumption in favor of the continued integrity of the protective order." 905 F.2d at 1428 (*citing Agent Orange*, 821 F.2d at 147-48 (protective orders modifiable only under extraordinary circumstances)). Other circuits "have simply left the balancing to the discretion of the trial court." *Id. (citing Stavro v. Upjohn Co. (In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.)*, 664 F.2d 114, 120 (6th Cir.1981)). But the Tenth Circuit decided to aline itself with other circuits that "have tipped the balance in favor of avoiding duplicative discovery." *Id. (citing Wilk v. American Medical Assoc.*, 635 F.2d 1295, 1299 (7th Cir. 1981); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264-66 (9th Cir.), *cert. denied*, 379 U.S. 900, 85 S.Ct. 186, 13 L. Ed.2d 175 (1964)).

Additionally, Professor Arthur Miller recognized that "[r]equests for modification of protective orders are relatively common and are subject to varying treatment by courts." Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 499-501 (1991) (citations omitted).[2] In the case of a protective order entered by a trial court,

---

[2]*See also* Note, *Nonparty Access to Discovery Materials in the Federal Courts*, 94 Harv. L. Rev. 1085, 1091-92 (March 1981) ("A Rule 26(c) order is clearly subject to modification, but the courts have been unable to agree upon the proper standard to be applied.")

8

because "[the] order presumably was issued to prevent harm to the litigants and to promote cooperation during discovery, the court should consider the overall effect of modifying or eliminating that protection." *Id.* at 499- 500 (citations omitted).

In discussing why protective orders are necessary and why courts should be hesitant to modify a protective order after disclosures have been made, Professor Miller noted:

> The critical question is to what degree not giving continued effect to earlier protective orders will diminish their efficacy as a discovery management device. To the extent that the parties relied on the protective order when they freely disclosed information without further contesting the discovery requests, subsequent dissemination would be unfair....
>
> Beyond unfairness to particular parties is the reality that, the more readily protective orders are destabilized, the less confidence litigants will have in them. If protective orders are not reliable, people will be more likely to contest discovery requests when private or commercially valuable data is involved. <u>A protective order can be effective as a management tool and as a mechanism for preventing discovery abuse **only** if parties believe it is credible.</u> If the parties know that the protective order can be abrogated easily, cooperation in discovery would be compromised and one significant incentive to settle would be reduced. Thus, unless strong evidence exists that a litigant did not rely on the existence of a protective order during discovery (for example, when the party continued to resist reasonable discovery requests) or that no legitimate interest exists in maintaining confidentiality, the balancing of the competing values that led the initial trial court to issue the order should not be undermined in a later proceeding. <u>The reality seems obvious: for protective orders to be effective, litigants must be able to rely on them.</u>

*Id.* at 499-501 (citations omitted) (emphasis added).

The First Circuit, a circuit also cited by Plaintiff, also recognized that "the lubricating effects of [a] protective order on pre-trial discovery would be lost if the order expired at the end

of the case or were subject to ready alteration." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) (where modification was sought to use documents in another lawsuit, district court recognized changed circumstances, but refused to lift protective order concerning business trade secrets after settlement of lawsuit) (*citing* Arthur Miller, *supra*, 105 Harv. L. Rev. at 499- 500).

While this review of authority reveals no majority rule or consensus among the circuits, and no dispositive case in the Eleventh Circuit, one undisputed point does emerge: the trial court retains the <u>power</u> and the <u>discretion</u> to modify a prior protective order. *See, e.g., Public Citizen*, 858 F. 2d at 782; *United Nuclear*, 905 F. 2d at 1427. Exactly what standard should guide a trial court in deciding whether to modify a protective order is less clear. The Second Circuit test, urged by defendants, applies a stringent standard that requires the moving party to show extraordinary circumstance or a compelling need to modify a protective order. *In re Agent Orange*, 821 F.2d at 147. As noted, the Eleventh Circuit rejected this strict standard in favor of grand jury access to material produced in civil litigation and covered by a protective order. *In re Grand Jury Proceedings,* 995 F.2d at 1020. The court assumes that the Eleventh Circuit would not follow that rejected standard in a case involving access to protected material for use in a future civil case, even though the circumstances of these two cases vary widely. The court concludes, however, that the Eleventh Circuit would not adopt the per se rule of disclosure employed in *In re Grand Jury Proceedings*, 995 F.2d at 1015, in situations like this case that do not involve the special concerns of a grand jury subpoena.

This court finds that the better-reasoned standard applies a balancing test to determine whether any justification exists for lifting or modifying the protective order, similar to that employed by the Third Circuit. *See Pansy*, 23 F.3d at 790. As the Third Circuit noted, one factor

the court should consider is the reliance placed by the parties on the protective order. *Id.* Another important factor should be the integrity of court orders and the purpose of confidentiality orders in streamlining the discovery process. *See Miller, supra*, 105 Harv. L. Rev. at 499-501.

IV.   Application to this Case

In this case, Plaintiff SRS, and Defendants Physitron, Paxton, and Witzig voluntarily entered into a protective order. The protective order "did away with" numerous objections that both plaintiff and the defendants could have and would have raised regarding many documents produced in the case. With the protective order in place, Plaintiff's counsel rightly argued to the Special Master in a discovery dispute that because the documents were protected by the order the Defendants could no longer use a "proprietary" objection to preclude disclosure of documents.

In responding to Defendants' counsel's argument that trade secret information involving Defendants' work with third parties should not be disclosed to Plaintiff because it was highly sensitive, proprietary trade secret information, the Special Master ruled:

> "... I would agree with Mr. Long, we have a protective order in place that the parties have consented to that is supposed to provide adequate protection to trade secret information. Mr. Raleigh, you'll have the opportunity to designate this information however you feel appropriate under the protective order and then will be bound by those provisions." (Depo. of Jim Paxton at p. 299).

Defendant's Response to Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion to Modify Protective Order and for Other Relief (Doc. 98), p.12. The reason these objections would no longer "work" was that the Defendants were insulated by the protective order. Thus, the protective order provided a "lubricating effect" regarding discovery. In the absence of a protective order, the parties would have fought long and hard over the documents requested in

discovery. The absence of repeated objections to discovery evidences the Defendants' reliance upon the protection order. Plaintiff now wants to un-do the protective order to which it consented and upon which Defendants relied during the course of discovery.

The court finds that allowing modification of a protective order would impede discovery in future cases, because parties would be discouraged from disclosing documents for fear of forced disclosure later. The protection of a protective order would be illusory. This court has considered the extent to which Defendants relied upon the protective order in disclosing documents and in settling this case. The parties to this lawsuit negotiated a stipulated protective order, and Defendants disclosed its trade secrets and intellectual property in reliance upon the protective order. That reliance should be honored unless some other factor tips the scale in favor of disclosure.

The court has considered all the circumstances in this case, including the facts that (1) the parties agreed upon the present protective order after negotiation; (2) Defendants relied upon the protective order when they made their production of documents; (3) Plaintiff did not seek redesignation of any documents until after the lawsuit had been settled by the parties; and (4) the parties settled the lawsuit by agreement, with neither party admitting any liability. The court also has considered the assertion by Plaintiff that Defendants no longer need this confidential information because they have agreed not to engage in work in areas involving Plaintiff's technology for seven years as part of the settlement of this case, and that Plaintiff desires to use this information in possible future litigation against third parties.

In balancing the interests of the parties – and also the interest of judicial efficiency and integrity – the court finds that the reliance of the Defendants on the protections afforded by the

confidentiality order and the need for the "lubricating effects" of the protective order outweigh Plaintiff's interest in avoiding duplicative discovery in a possible future civil case. Therefore, the court refuses to modify the protective order.

A separate order in conformity with this opinion will be filed contemporaneously.

DONE and ORDERED this 23rd day of July, 2003.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

13